**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| STAFF4JOBS, LLC, *doing business as*, LYNEER STAFFING SOLUTIONS, | |
| Plaintiff, | Civil Action No. 3:18-cv-13399-BRM-LHG |
| v. | **OPINION** |
| LIST LOGISTICS, LLC and GEORGE YFANTOPULOS, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants List Logistics, LLC ("List") and George Yfantopulos' ("Yfantopulos") (collectively, "Defendants") Motion to Dismiss (ECF No. 14). Plaintiff Staff4Jobs, LLC ("Staff4Jobs") opposes the Motion. (ECF No. 15.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motion is **GRANTED**.

**I.    BACKGROUND**

**A.    Factual Background**

For the purposes of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### 1. The Parties

Staff4Jobs is a New Jersey Limited Liability Company with its principal place of business in New Jersey. (Compl. (Ex. A to ECF No. 1) ¶ 1.) List "is a limited liability company with a principle place of business . . . [in New Jersey]." (*Id.* ¶ 3.) Yfantopulos is the CEO and President of List and domiciled in Massachusetts. (*Id.* ¶¶ 2, 18.)

### 2. The Agreement

"On March 30, 2015, Yfantopulos caused L[ist] to enter an agreement ('Agreement') with [Staff4Jobs] for staffing services, wherein Defendants promised to make payment, with interest thereon in monthly payments . . . ." (*Id.* ¶ 5.) Staff4Jobs "provided all requested staffing services in accordance with the Agreement." (*Id.* ¶ 6.) But, "Defendants failed to remit payment for said services in accordance with the Agreement" and owe Staff4Jobs $964,705.29, plus interest. (*Id.* ¶¶ 8-10.) Yfantopulos made false representations to Staff4Jobs when entering into the Agreement, that List had the financial capacity to make payments in accordance with the terms of the Agreement. (*Id.* ¶ 19.) However, List "was undercapitalized and never had the funding to stand on its own, without Yfantopulos." (*Id.* ¶ 14.)

### B. Procedural Background

Staff4Jobs filed this action in the Superior Court of New Jersey on July 26, 2018, which was subsequently removed to this Court on August 30, 2018. (ECF No. 1.) The Complaint alleges the following causes of actions: (1) breach of contract against both Defendants; (2) book account against both Defendants; (3) piercing the corporate veil as to Yfantopulos; (4) fraud against both Defendants; (5) conversion against both Defendants; (6) quantum meruit against both Defendants; and (7) breach of fiduciary duties as to Yfantopulos. (Ex. A. to ECF No. 1.) On November 20, 2018, Defendants filed a Motion to Dismiss. (ECF No. 14.) Staff4Jobs filed an opposition on

December 3, 2018. (ECF No. 15.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Instead, the plaintiff must "present[] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* at 1223 (citations omitted). Because a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings," the jurisdictional allegations may be supported with sworn affidavits or other documents. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Once the plaintiff meets his or her burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may

consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### III. DECISION

#### A. Personal Jurisdiction over Yfantopulos

Staff4Jobs does not allege Yfantopulos is subject to general personal jurisdiction in this Court. (ECF No. 15 at 3.) Yfantopulos is domiciled in Massachusetts, and Staff4Jobs does not allege he has any contact with New Jersey beyond the scope of Staff4Jobs' claims. (*Id.* at 3-5.) Therefore, Yfantopulos is not subject to general personal jurisdiction in this Court. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").

Instead, Staff4Jobs contends Yfantopulos is subject to specific personal jurisdiction in this Court. (ECF No. 15 at 3-5.) Specifically, Staff4Jobs claims Yfantopulos made misrepresentations to Staff4Jobs that List had the financial capability to make payments as described under the terms of the Agreement during meetings that took place in New Jersey, including a meeting on September 14, 2016. (*Id.* at 5.) It further asserts false misrepresentations were exchanged via email and telephone directed at people in New Jersey. (*Id.*)

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In New Jersey, "courts may exercise jurisdiction over a nonresident

5

defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (2010), *rev'd on other grounds sub nom.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

Personal jurisdiction may be established through general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (noting that "opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924).

Specific jurisdiction may be established over a defendant where the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted). More specifically, specific jurisdiction requires that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquistion, LLC v. Multi-Media, LLC*, No. 14-1661, 2015 WL 5310203, at *12 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, No. 16-3785, 2018 WL

1096185, at *14 (3d Cir. Mar. 1, 2018) (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum") (citation omitted).

A court's exercise of personal jurisdiction "requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (emphasis added). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also O'Connor*, 496 F.3d at 316 (discussing the three-step process in determining personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A] plaintiff's residence, by itself, is insufficient to establish personal jurisdiction" over a defendant. *Choi v. Damul Corp.*, No. 12-2440, 2014 WL 314669, at *7 (D.N.J. Jan. 27, 2014). "Once specific jurisdiction is established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises." *Boswell v. Cable Servs. Co., Inc.*, No. 16-4498, 2017 WL 2815077, at *3 (D.N.J. June 29, 2017).

Generally, "an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." *Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, No. 05-54, 2005 WL 1677479, at *5 (D.N.J. July 15, 2005) (citing *Nicholas v. Saul Stone & Co., LLC*, No. 97–860, 1998 WL 34111036, at *10 (D.N.J. June 30, 1998), *aff'd*, 224 F.3d 179 (3d Cir. 2000)). This principle "is intended to prevent a corporate officer's official contacts with the forum state from serving as a basis for personal jurisdiction over

7

the officer individually." *Id.* Additionally, "personal jurisdiction does not exist over a corporate officer simply because the corporate entity itself may be amendable to personal jurisdiction in the forum state." *Id.* (citation omitted). Instead, the defendant's contacts with the forum must be assessed individually. *Id.* "[A]ctions taken within the forum state by a corporate official in his official capacity may be considered for purposes of establishing jurisdiction over him in his individual capacity." *Educ. Testing Serv. v. Katzman*, 631 F. Supp. 550, 559 (D.N.J. 1986). However, actions taken by the corporate entity cannot be imputed to the individual defendant unless it is established that the individual defendants himself engaged in the specific actions. *Id.*

The Court finds at this stage of the litigation Staff4Jobs has presented a prima facie case for the exercise of specific jurisdiction over Yfantopulos. Yfantopulos purposefully conducted business in New Jersey and the claims against him result from alleged injuries that arose out of or relate to those activities. Staff4Jobs alleges Yfantopulos made misrepresentations to Staff4Jobs that List had the financial capability to make payments as described under the terms of the Agreement during meetings that took place in New Jersey, including a meeting on September 14, 2016. (ECF No. 15 at 3-5.) It further contends false misrepresentations were exchanged via email and telephone directed at people in New Jersey. (*Id.*) Accordingly, Defendants' Motion to Dismiss Yfantopolus for lack of personal jurisdiction is denied on this ground.

B.  **Breach of Contract Against Yfantopulos**

Defendants argue Staff4Jobs fails to state a claim for breach of contract against Yfantopulos because the "Complaint alleges that it entered into an agreement with List." (ECF No. 14 at 6.) Staff4Jobs does not respond to this argument. (*See* ECF No. 15.) In fact, Staff4Jobs admits "Yfantopulos, individually, was not a party to the Agreement with [Staff4Jobs]." (*Id.* at 9.) As a result, in their reply Defendants argue since Staff4Jobs offers no response to this argument, it has

8

essentially abandoned the claim, and the claim should be dismissed with prejudice. (ECF No. 16 a 2.) Indeed, "[w]here an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." *Lawlor v. ESPN Scouts, LLC*, No. 10–5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")). Accordingly, Staff4Jobs' breach of contract claim, Count One, is **DISMISSED** as to Yfantopulos.

### C. Book Account Claim

Count Two of the Complaint alleges "[t]here is due from the Defendants the sum of $964,705.29 on a certain book account." (Ex. A to ECF No. 1 ¶ 11.) Defendants argue Staff4Jobs' book account claim is duplicative of its breach of contract claim, and therefore, should be dismissed. (ECF No. 14 at 6.) Staff4Jobs does not respond to this argument. (*See* ECF No. 15.) Because this claim is uncontested in Staff4Jobs' opposition brief, it is also **DISMISSED**. *Lawlor*, 2011 WL 675215, at *2

### D. Piercing the Corporate Veil

Count Three of the Complaint alleges Yfantopolus "abused the corporate form of List" and therefore, is also liable for the $964,705.29 due pursuant to the Agreement. (Ex. A to ECF No. 1 ¶¶ 12-16.) Defendants argue Staff4Jobs' Complaint "is devoid of any factual allegations in support of its veil piercing claim." (ECF No. 14 at 8.) Specifically, they argue "the Complaint fails to even allege how the corporate form was allegedly abused, or what 'fraudulent or other wrongful activity' [List] was allegedly used for." (*Id.* at 8-9.) Staff4Jobs contends it "has plead facts and circumstances constituting [Yfantopulus'] fraud and the damages sought." (ECF No. 15 at 6-7.)

Pursuant to New Jersey law, "personal liability will only be imposed if it is demonstrated

that the officer or director disregarded the corporate form and 'utilize[d] the corporation as a vehicle for committing equitable or legal fraud.'" *Rowen Petroleum Properties, LLC v. Hollywood Tanning Sys., Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012) (quoting *Marascio v. Campanella*, 689 A.2d 852, 858 (N.J. 1997)). A court can "ignore a corporation's separate entity in order to prevent it from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law." *Id.* (quoting *Melikian v. Corradetti*, 791 F.2d 274, 281 (3d Cir. 1986)). In order to state a claim for piercing the corporate veil under New Jersey law: "(1) there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual cease to exist; and (2) the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 768 (D.N.J. 2013) (citation omitted). The following factors are to be considered in determining whether to pierce the corporate veil:

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (internal citations omitted).

The Court agrees with Defendants, Staff4Jobs has provided no factual allegations that would support a veil piercing claim. The Complaint merely alleges:

> 13. Yfantopolus has abused the corporate form of L[ist] to advance his own personal interests.
> 14. L[ist] was undercapitalized and never had the funding to stand on its own, without Yfantopolus.
> 15. L[ist] is a mere instrumentality through which Yfantopolus

> perpetrates fraudulent and other wrongful activity.
> 16. L[ist] is a corporate fiction created by Yfantopolus and to defraud [Staff4Jobs] and steal the property and services of [Staff4Jobs].

(Ex. A to ECF No. 1 ¶¶ 13-16.) These allegations are conclusory statements without factual support, which is not sufficient to survive a motion to dismiss. Staff4Jobs fails to allege facts demonstrating a unity of interest and/or ownership that the separate personalities of List and Yfantopolus ceases to exist. The Complaint fails to allege how the corporate form was abused, what fraudulent activities Yfantopulos engaged in, and what corporate formalities were not adhered to. Accordingly, Defendants Motion to Dismiss the piercing the corporate veil claim, Count Three, is **GRANTED**.

### E. Fraud

Count Four[1] of the Complaint alleges Yfantopolus committed fraud by representing to Staff4Jobs that List had the financial capability to make payments in accordance with the Agreement when it knew List did not have the financial capability to make such payments. (Ex. A to ECF No. 1 ¶ 19.) Defendants argue "[t]he Complaint fails to allege any factual allegations with the specificity required by Rule 9(b) and further relies on an alleged duty to disclose that is not supported under New Jersey law." (ECF No. 14 at 9.) Staff4Jobs contends it is not alleging Yfantopolus had a duty to disclose, but instead that he made representations to it that List had the financial capability to make payments in accordance with the Agreement, and that it has sufficiently plead such. (ECF No. 15 at 7-8.)

---

[1] The Complaint accidently includes two causes of action identified as "Count Three" as such, for the purposes of clarity the Court will refer to the fraud count as "Count Four", the conversion count as "Count Five," the quantum meruit count as "Count Six," and the breach of fiduciary duty count as "Count Seven."

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Staff4Jobs' common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

Staff4Jobs fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). It does not allege what representations regarding List's financial capability were made, to whom they were made, when they were made, or where any misrepresentations were made. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011). Staff4Jobs's general allegation that Yfantopulos "made representations to [Staff4Jobs] that L[ist] had the financial capability to make payments as described under terms of the Agreement" is not sufficient to meet the heightened pleading standard. (Ex. A to ECF No. 1 ¶ 19.) Accordingly, Defendants Motion to Dismiss the fraud claim, Count Four, is **GRANTED**.

### F. Conversion

Count Five of the Complaint alleges Defendants "wrongfully took possession of the staffing services and used them to service third parties" without remitting payment to Staff4Jobs for the staffing services. (Ex. A to ECF No. 1 ¶¶ 23-27.) Defendants argue this claim is duplicative of its breach of contract claim, and therefore, should be dismissed. (ECF No. 14 at 11-12.)

Pursuant to New Jersey law, "conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Die Casters Int'l v. United States*, No. 08-4402, 2009 WL 3229857, at *4 (D.N.J. Sept. 30, 2009) (quoting *LaPlace v. Briere*, 962 A.2d 1139, 1144 (N.J. Super. Ct. App. Div. 2009)). However, courts "have expressly restricted application of the doctrine of conversion when it seeks to turn on a claim based on breach of contract." *Longo v. Envt'l Prot. & Improvement Co., Inc.*, No. 16-09114, 2017 WL 2426864, at *6 (D.N.J. June 5, 2017).

Here, Staff4Jobs conversion claim asserts Defendants failed to honor their obligations under the Agreement, by failing to remit payment for the staffing services provided. (Ex. A to ECF No. 1 ¶¶ 23-27.) This claim is clearly akin to Staff4Jobs' breach of contract claim and is therefore **DISMISSED**.

### G. Quantum Meruit

Count Six of the Complaint alleges Staff4Jobs "sues the Defendants for the value of the services received by the Defendants upon the promise of the Defendants to pay the amount as determined in the Agreement. . . . Payment has been demanded and has not been paid." (Ex. A to ECF No. 1 ¶¶ 29-30.) Defendants argue Staff4Jobs' quantum meruit claim is also duplicative of its breach of contract claim and, therefore, must be dismissed. (ECF No. 14 at 12.) In its opposition,

Staff4Jobs abandoned its quantum meruit claim as to List, but contends that "Yfantopulos, individual, was not a party to the Agreement" and therefore, is liable under a theory of quantum meruit. (ECF No. 15 at 9.)

"Quantum meruit is applied when, absent a manifest intention to be bound, 'one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust.'" *Fintech Consulting v. ClearVision Optical Co.*, No. 12-4956, 2013 WL 1845850, at *4 (D.N.J. Apr. 30, 2013) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992)). However, it is well settled that:

> An implied contract cannot exist when there is an existing express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise. It is only when the parties do not agree that the law interposes and raises a promise. When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the law implies, in the absence of that agreement which they made for themselves.

*Id.* (quoting *Moser v. Milner Hotels*, 78 A.2d 393, 394 (N.J. 1951).

Staff4Jobs' quantum meruit claim fails as to both Defendants. The Complaint clearly alleges Staff4Jobs entered into an agreement with List, where it provided List with staffing services for compensation. As such, an express contract about the identical subject exists. Therefore, Staff4Jobs cannot maintain a quantum meruit claim against List.

The quantum meruit claim also fails as to Yfantopulos. Because Staff4Jobs admits it entered into the Agreement with List for staffing services, by default, it did not enter into the same agreement, whether expressly or impliedly, with Yfantopulos. Moreover, the Complaint acknowledges Staff4Jobs merely conferred a benefit on List, by providing it with staffing services. Staff4Jobs did not provide staffing services to Yfantopulos. Staff4Jobs also does not allege any

expectation of payment from Yfantopulos. As such, it has not plead a cause of action of quantum meruit against Yfantopulos. Accordingly, Defendants Motion to Dismiss Staff4Jobs quantum meruit claim is **GRANTED**.

### H. Breach of Fiduciary Duties

Count Seven of the Complaint alleges Yfantopulos breached his fiduciary duty to Staff4Jobs "as creditor by converting the assets of L[ist] to his personal use and benefit." (Ex. A to ECF No. 1 ¶ 33.) Defendants argue Staff4Jobs' "cause of action for breach of fiduciary duty [] against [] Yfantopulos is insufficient and, in any event, premature." (ECF No. 14 at 13.) Staff4Jobs does not respond to this argument. (*See* ECF No. 15.) Because this claim is uncontested in Staff4Jobs' opposition brief, it is also **DISMISSED**. *Lawlor*, 2011 WL 675215, at *2

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Staff4Jobs may filed an amended complaint curing all deficiencies by no later than July 26, 2019.

Date: June 27, 2019                    */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**